# CASES

IN THE

# SUPREME JUDICIAL COURT,

IN THE

COUNTY OF HANCOCK, JUNE TERM, 1833.

---

## ADAMS *vs.* ROWE.

*Scire facias* against one who had been charged as trustee in a process of foreign attachment, is not a *new suit*, but is an incident to, or *a part and continuation of*, the original process.

A service of such writ of *scire facias*, in a suit commenced in *Massachusetts*, by the officer's leaving a copy thereof at the *last and usual place of abode* of such trustee in that State, according to the laws of the State, is sufficient, though prior to such service he had removed to a neighboring State.

And a judgment rendered in such suit, in the Courts of *Massachusetts*, is conclusive on the defendant, and not open to examination in the Courts of this State, where it is sought to be enforced.

In this action, which was debt on judgment, the following facts, in substance, were agreed in a case stated for the opinion of the Court.

At the Court of Common Pleas held at *Boston, July,* 1829, *Adams,* the present plaintiff, recovered judgment against one *Henry J. Benson,* as principal, and against his goods, effects and credits, in the hands of *Rowe,* the present defendant, as his trustee, *Rowe* at that time residing in *Boston,* and the service of the writ on him being *personal.* Judgment was rendered on default. Execution issued, and a return of *nulla bona,* and *non est inventus,* was made to the Court, *October* term, 1829. Within a year thereafterwards, *Adams* sued out his writ of *scire facias* against *Rowe* — and the officer returned thereon, that he had summoned the defendant, "by leaving an attested copy of the writ at the

*last and usual place of abode of said Rowe in Boston.*" Some time *prior to such service* however, *Rowe had removed to this State where he had ever since resided.* After two continuances, judgment was rendered against the defendant, on default; and that judgment forms the basis of the present action. The defendant had no *actual notice* of the scire facias suit against him, until after judgment had been rendered therein.

A nonsuit or default was to be entered, according to the opinion of the Court.

*Rogers,* for the defendant, submitted an argument in writing, of which the following is an abstract.

The process of *scire facias* against a trustee is a statute process, and the plaintiff to avail himself of it, must bring himself clearly within the terms of the statute. The statute of *Massachusetts* of 1795, *ch.* 64, *sec.* 6, provides for the suing out of a *scire facias* against a trustee. The 7*th sec.* provides, " that if any trustee upon whom the writ of *scire facias shall be served,* shall not appear," &c. he shall be adjudged trustee, and judgment shall be rendered against him accordingly. The Court are empowered to render judgment against the trustee only where there has been a *legal service* of the *scire facias.* And it is contended that there was no such service on the defendant.

The *statute of Mass.* of 1798, *ch.* 50, *sec.* 1, directs the manner in which service shall be made when the *goods* or *estate* of any person shall be *attached.* *Sec.* 2*d* provides the mode of service in *all suits* where the process is by original summons, as in *scire facias,* &c. By this section, " leaving a true copy thereof at his or her house *or place of last and usual abode,*" &c. is declared to be a good service — that is, in all suits therein specified. By the 3*d section,* where the defendant " was at no time an inhabitant, or resident within the Commonwealth," in *all actions* specified in the 2*d section,* another mode of service is provided. The 2*d sec.* of the *stat.* of *Maine, ch.* 59, (which is a transcript of the *Mass.* statute) is succeeded by a transcript of the 3*d section,* but having an additional exception in favor of those who *having had* a residence in the State, have *removed* therefrom prior to the suing out of the *scire facias.*

From the cited provisions of these several statutes, it appears,

that the 2d section of the statute of *Mass.* passed 1798, is not *universal* in its application, and intended to embrace *all actions.* What then are its limitations? It is contended they are to such suits as may be instituted in the Courts of the State against those having *a residence* there, in suits wherein the Court have *jurisdiction* of the *cause* and the *parties. Bissell* v. *Briggs,* 9 *Mass.* 462. *Hall & al.* v. *Williams & al.* 6 *Pick.* 232.

The object of the additional provision in the 3d section of the statute of *Maine,* was not merely to protect the defendant, but to supply a legal deficiency, and to provide a mode by which a plaintiff could recover in a case not before authorised.

The Court in the case of *Hall* v. *Williams, page* 240, say, that "it is manifestly against *first principles* that a man should be condemned without an opportunity of being heard in his defence." How is this opportunity provided if a citizen, having been once an inhabitant of a State, but removed therefrom, one, ten, or more years, may be defaulted, having no other notice than a copy of the writ left at the house he last occupied? The laws of a State do not operate except upon its own citizens, *extra territorium,*" say the Court in the case before cited. "Nor does a judgment of its judicial tribunals, except so far as is allowed by comity, or required by the *Constitution* of the *United States;* and neither of them can be held to sanction so *unjust* a principle." The reasoning of the Court throughout forcibly illustrates the injustice of applying the principle contended for in a case like the present. *Rowe,* is *in fact,* not trustee, and the presumption of law is with him. The law presumes no indebtedness. After the service of the original writ upon him, he removes from *Massachusetts* into *Maine;* and the first intelligence of any proceedings against him comes in the shape of an execution. The intimation of the Court, that a new trial could be obtained and the judgment corrected, is answered by the Court in the case before cited from 6 *Pick.* 240.

It is said, admitting the principles decided in the cases of *Bissell* v. *Briggs* and *Hall* v. *Williams,* they are not applicable to this case, which is but the continuation of a process regularly instituted and upon which notice was regularly given and a legal judgment recovered. It is true that he was regularly served with no-

tice in the trustee process, and that this *scire facias* was predicated upon that judgment. So is *scire facias* against bail, founded upon certain proceedings upon mesne process. *Scire facias* to renew a former judgment, is predicated upon that judgment. The necessity of notice is based upon the idea, that as the rights of the parties may be affected by the suit, the law no less than justice require that an opportunity should be afforded to protect those rights. If the party in consequence of the first suit was obligated to be ever afterwards in Court, why the necessity of any notice? If notice means any thing, it means that the party against whom the process issues shall be apprised of the proceedings. Can the copy of a writ of scire facias, left at the dwelling-house of an individual which was once tenanted by the defendant, but which he has vacated for years, and exchanged for a residence in a neighboring State, be available notice in law? Well might the Court say in 6 *Pick.* that neither comity nor the Constitution of the *United States* can be held to sanction so unjust a principle.

But it is apprehended that all doubts upon the subject are dispelled by a subsequent statute of *Massachusetts*, passed *March* 2, 1829. By that statute, which is prior to the recovery of the judgment declared upon, it is enacted that in *any action*, &c. against any person who is not an inhabitant or resident in this *Commonwealth*, &c. the Court before whom, &c. on suggestion thereof made, and the facts appearing by the officer's return upon the writ, shall order the said action continued, and the Court may order notice, &c. This statute is in effect similar to our own statute, *ch.* 59, *sec.* 7, and goes to confirm the position that the subsequent sections of the " Act Regulating Judicial Process and Proceedings" are not in restraint and qualification of the 2d *section* but an enlargement of the general provisions of the act; and viewed in connection with the 2d *section* serve to explain what is therein intended by the term " *all suits*," and exhibit the necessity of adopting such a construction as will promote substantial justice and preserve to the parties the justice administered by the application of " first principles."

It may be said that the principles for which we contend, if adopted, would enable a trustee to defeat the claim of the plain-

tiff by removing from the State, after a service of the writ upon him and before the suing out of the *scire facias*. To this it may be answered, that the *rights* of the parties are not affected, the mode of enforcing them only is changed. It is for the legislature to provide a suitable mode, and when that is done, the objections cease.

In conclusion it may be said, that the statute of 1798, has provided no mode of service in a case like the present; the term " all suits" being applicable to all such suits as where the defendant is within the jurisdiction of the Court. That this is not only enforced by a consideration of the necessity of giving such a construction to the statute as will comport with first principles and promote the ends of substantial justice, but also by the subsequent provisions of the 3*d section* of the additional provision in the statute of *Maine,* above referred to. If there has been no legal service then by the statute, the Court were not authorised to render judgment, and their proceedings are merely void.

But if there had been a compliance with the provisions of the statute, and the defendant had had legal notice by the law of *Massachusetts,* the case finds that there was no notice *in fact,* and " as the record does not show any service of process," by which the Court must intend *personal* service, " or any appearance in the suit, we think he may be allowed to *avoid* the effect of the judgment *here,* by showing he was not within the *jurisdiction* of the Court which rendered it."

The circumstance that this is *scire facias,* is immaterial as to the question raised, the statute and the reason of things require the service to be alike in both cases. 1 *Stark. Ev.* 215, *in notis.*

*Pond,* for the plaintiff, cited the several statutes of *Massachusetts* and *Maine,* touching the question, and the following adjudged cases. *Peck* v. *Warren,* 8 *Pick.* 163; *Mitchell* v. *Osgood & al.* 4 *Greenl.* 132.

MELLEN C. J. at the ensuing *June* term, delivered the opinion of the Court.

As *Rowe* was an inhabitant of *Boston* when the original action was commenced against *Benson* and the defendant as his trustee, and as he was served personally with an attested copy of

the process, the Court of *Massachusetts* had jurisdiction of the cause, and over both the defendants; at least, so far as that the default of each was properly entered, and both the judgments thereon were correctly rendered, and, *to all legal purposes*, binding on both, in *this State* as well as in *Massachusetts.* But as to the present defendant, the default entered and the consequent judgment against the goods and chattels, rights and credits of *Benson* in his hands and possession, did not expose him to any liability to pay any sum whatever to the plaintiff; for if he had been *actually* notified and accordingly appeared and answered to the *scire facias*, and disclosed on oath as by law prescribed, and on his disclosure the Court had adjudged him not the trustee of *Benson* when the original process was served upon him, he would have been at once discharged by the Court; and the only consequence of his neglect to appear and disclose on the original process, instead of being defaulted, would have been that he could not have recovered any costs. On examination of the several acts of *Massachusetts*, relating to the service of writs of *scire facias* which have been introduced and commented upon in the argument, we are not disposed to doubt, (were it our province to inquire) that the service of the *scire facias* in the present case was regular, as it appeared on the officer's return; and authorised the Court there, to render the judgment on which the plaintiff has declared. The important and interesting question is, "What is the character of that judgment *in this State*, as to its conclusiveness on the defendant and upon the Court in this State, where the plaintiff is seeking its enforcement?" It appears that the defendant removed from *Massachusetts* and became a permanent inhabitant of *Maine* some time before the writ of *scire facias* was sued out, and has continued such to this time; and never had any notice of the existence of such suit on the *scire facias*, or of the judgment therein rendered against him, till some time subsequent to its rendition.

If the judgment declared on had been rendered against the defendant in a common action, in which he had been sued as the *debtor* of the *plaintiff*, instead of the debtor of *Benson*, it is perfectly clear that, according to the decisions in *Bissell* v. *Briggs* and *Hall & al.* v. *Williams & al.* cited at the argument, the

judgment would be open to examination in our courts, as much as the demand, on which the judgment was founded, would be. It would not have the sanctity of a judgment, and thus conclude the defendant as to his rights. The case of *Bissell* v. *Briggs*, was decided many years since, and prior to our separation from *Massachusetts;* and has ever been considered in this State as reposing on the soundest principles, and sustained by unanswerable arguments. And the case of *Hall & al.* v. *Williams & al.* was decided on the same principles, after a full and learned investigation of the subject, and a review of the principal authorities, having a bearing upon it. The only question of any importance in the cause is, whether the action on *scire facias* is to be considered as an *exception*, and not subject to the operation of the doctrine established by the foregoing decisions; or, in other words, was the *scire facias* to be considered as a *new action*, or a *continuation* of the *original suit*, and as constituting a necessary part of it? If it was, it would seem that this action is maintainable, because the Court of *Massachusetts* had unquestionable jurisdiction of that suit. In 6 of *Dane's Abr.* 463, the learned author says, that a *scire facias* is not properly *an action*, but a mere *continuation of an action*, whenever it is used to *carry into effect* a former judgment against a party to it; and it differs from *scire facias* against *bail;* that, he observes, is a *new action*. He states no *other scire facias* as an exception. Bail are *sureties* for the defendant, in the same manner as the *indorser* of a writ is a *surety* for the plaintiff. In both cases, however, their suretyship is of a conditional character. In certain events *each* may be liable to pay a sum of money recovered by one party against the other, but, in other respects, they have no immediate connection with the original action. The *scire facias* against *bail* and against the *indorser* of a writ is properly considered as a *new action;* in each case it issues against a person who was no party to the record in the original action. In the case before us, *Rowe* was a party to the action when the same was commenced; the judgment entered on his *first default*, was indefinite, incomplete, and in no respect *conclusive* upon him, except as to costs. The statute has therefore made provision for furnishing the creditor with *further* process, for ascertaining the plaintiff's *rights* and the

defendant's *liabilities*, and thus preparing the way for his obtaining *final* process, to compel payment of whatever sum the Court shall adjudge to be in his hands and possession as the trustee of the principal debtor.    When the defendant submitted to the first default, he knew that he was thereby subjected to no liabilities to the plaintiff; he knew that there must be further proceedings in court, in which he was to bear a part, in making his disclosure and discharging himself on oath, or else that the plaintiff would avail himself on *his default*, of all the expected advantages from the institution of proceedings against him; he knew that his own conduct had rendered a *scire facias* necessary to a final decision of the cause against him.    He knew when he removed from *Massachusetts* into this State, that legal process from the Court in *Massachusetts*, could not run into *Maine*; of course, that there could be no service of the *scire facias* upon him *personally*, or in any other manner than by a copy of it left at his last and usual place of abode in *Boston*, according to the law of *Massachusetts*. He knew that if he had *no goods, effects, or credits* of *Benson* in his hands when the process was served on him personally in *Boston*, it was important for him to disclose that fact on the *scire facias*, and thus protect himself from all danger consequent upon his *first* default.    He must be presumed to have known that the *scire facias* would necessarily issue from the Court in *Massachusetts*, and that no service of the writ could be made upon him in this State, but only by leaving a copy at his last and ·usual place of abode in *Boston*, as we have before mentioned.    Considering the peculiar nature of our trustee process, must not the *scire facias*, which the statute has provided, be considered as a part, and a very essential part, of the original action, and a continuation of it for the purposes we have been considering.    It is true that the statute provides for a service of the *scire facias* on the defendant in the same manner as for that of the *original process*, so that he may know when and where he must appear and disclose; but it is very evident that its provisions are predicated on the idea that the party summoned continues within the jurisdiction of the Court, where legal service may be made upon him.    No provision is made for a service upon him, if he should remove from the State in the manner the defendant did.    Our construction of the

act must be such, if possible, as to give operation and effect to all parts of it, and preserve and protect the rights of all concerned; for such must have been the intention of the legislature which framed and passed the act. Now, as the defendant was in the first instance *personally* notified to answer and disclose before the Court the facts as to his being the trustee of *Benson*, as alleged in the writ; as he did not appear at the first term, but was defaulted, thereby declaring that he intended to make his disclosure on the *scire facias*; and as he removed without the jurisdiction of the Court, before the *scire facias* was issued, so that it could not be legally served upon him in this State; must he not be considered as having agreed to take notice of such a service as could be made, and was made, in *Massachusetts*, by leaving a copy of the writ in *Boston*, where he had his last place of abode: and, that whatever inconvenience he has suffered, must it not be imputed to his inattention to his own interest in not leaving an agent in *Boston*, with whom a copy of the writ could have been left, and notifying the plaintiff of the same. No one will deny the right of the defendant to remove, as he did, from *Massachusetts*; but if by so doing, he *could* and *did* at once relieve himself from accountability, and dissolve the *lien* on the property in his hands, created by the service of the original process, the effect was certainly a singular one; and to sanction such a principle, would often produce direct injustice and destruction of a creditor's rights, and lead to the practice of innumerable frauds with perfect impunity. For we are not aware how such a consequence can be prevented, but by considering the jurisdiction of *Massachusetts*, which had once fully attached, as still continuing, on the principle that the *scire facias* is an incident to, or a part and continuation of the original process. It has been said, however, that though it is not such, still the Court of *Massachusetts*, might have had jurisdiction, in respect to the *scire facias*, and rendered the judgment which they did render, so as to be conclusive upon the defendant in this action, provided *actual* notice had been given to him in the manner provided by the act of 1829. True, it might have been binding on him, had the present action been brought in *Massachusetts*, and personal service been made there. So it would be, as the *scire facias* was served. If the Court in that

State had jurisdiction of the *whole* cause, the service made was sufficient, in our opinion, for the reasons we have given. If the Court had *no* jurisdiction over the defendant, of what use could personal notice, served upon him in *this State*, have been? He had no *property* in *Massachusetts*; now, if *Massachusetts* had no jurisdiction over any of the defendant's *property*, nor over *his person*, how could personal notice, served on him in *this State*, give any jurisdiction to *that* State, or enable its courts to render a judgment binding on him here. · The answer is plain. Surely our Courts cannot render a legal judgment against a citizen of *Louisiana*, who has no property in this State, merely serving a summons upon him in *Louisiana*. Whether the defendant could have discharged himself on oath, had he appeared on the *scire facias*, we have no means of knowing. If he cannot avail himself of the defence to the present action, which has been urged, it does not follow that he might not have found relief by application to the proper tribunal in *Massachusetts*. This he has declined doing, for reasons which were satisfactory to himself.

We place the decision of this cause upon those provisions and principles of our trustee act, which are of so peculiar a character, as when applied to such a case as the one under consideration, must place it out of the reach and influence of the doctrine established in the cases above cited; and for the reasons we have assigned, that decision is in favor of the plaintiff. Accordingly, a default must be entered.